UNITED STATES COURT OF INTERNATIONAL TRADE

```
-------------------------------------------------------------------
SUPRAJIT CONTROLS, DIV.OF SUPRAJIT USA    X
INC., SUCCESSOR-IN-INTEREST TO            :
KONGSBERG AUTOMOTIVE INC.,                :
                                          :
        Plaintiff,                        :
                                          :    No. 23-00181
        v.                                :
                                          :
UNITED STATES,                            :
                                          :
        Defendant.                        X
-------------------------------------------------------------------
```

# COMPLAINT

Plaintiff, Suprajit Controls, Div. of Suprajit USA Inc., Successor-in-Interest to Kongsberg Automotive Inc., by and through its undersigned counsel, for its Complaint in this matter against Defendant, the UNITED STATES, does hereby state, plead, and allege as follows:

## CAUSE OF ACTION

1.  This action is commenced by Plaintiff, Suprajit Controls, Div. of Suprajit USA Inc., Successor-in-Interest to Kongsberg Automotive Inc. ("Suprajit"), to contest the denial of its protest against the classification, in liquidation, of certain actuators used in automotive applications.

## JURISDICTION

2.  This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

3.  All liquidated duties, taxes and fees were paid prior to the filing of this action.

## PARTIES

4.  Plaintiff Suprajit is a corporation organized and existing under the laws of the State of Delaware and headquartered in Wichita, Kansas, Plaintiff is successor-in-interest to Kongsberg

Automotive Inc., having acquired Kongsberg's light duty cable ("LDC") business on April 6, 2022. Kongsberg was engaged in the manufacture and importation of *inter alia* various actuators, including the actuators which are the subject of this lawsuit. Kongsberg acted as importer of record ("IOR") for the entries of actuators which are at issue in this action.

5. Defendant United States is the Federal Defendant. The actions complained of herein were undertaken by its agency U.S. Customs and Border Protection ("Customs" or "CBP"), which is a component of the U.S. Department of Homeland Security ("DHS").

## STATEMENT OF FACTS

6. The merchandise at issue consists of certain "actuators"—*i.e.*, electromechanical devices that are designed to control flow of energy to direct and effectuate a particular movement or operation (work) in motor vehicles. An Actuator receives a source of energy and uses it to move something as it converts the source of energy into physical-mechanical motion.

7. The actuator converts energy into an intended mechanical motion by relying on a printed circuit board assembly ("PCBA") to intelligently process input signals, regulate the power delivery, and coordinate a specific function according to the PCBA's customized software programming (e.g., PCBAs can be programmed to control run-time, current measurement protection, temperature, etc.). The automated triggering of a mechanism via the PCBA, eliminates the need for manual operation.

8. Operation of the actuator is initiated by a remote signaling device that sends a nuanced electrical signal to the PCBA. The PCBA processes the inputs then engages the motor, which follows the PCBA's directive for its operating condition to delivery rotary motion.

9. The simple rotary motion of the motor is then converted through a detailed and complex set of gears (Transmission) that balance and deliver the required forces and travels

through to an integrated mechanical cable assembly or assemblies. The mechanical cable assembly or assemblies then transmits remote linear motion, through typically arduous routings necessary within a vehicle mechanism systems (e.g. seat system, hood release controls, door modules), in order to apply the proper load and travel to a latch or other like device, thus enabling the release of the latch to enable motion of the vehicle mechanism system (e.g., tumbling a seat, reclining a seat, folding a seat, adjusting a seat position, opening a fuel door, releasing a hood to open, opening a trunk, or locking and latching functions).

10. The automated triggering of such a electromechanical actuator mechanism eliminates the need for manual operation, however the PCBA embedded software enables the system to perform both the unlatching and re-latching within the seat system that is critical for function and safety.

11. The proper actuation of a vehicle mechanism by an actuator as in this product is critically controlled by the design and manufacture of the following sub-systems: PCBA, Motor, Gear Transmission, Cable Assembly. These sub-systems must work in design harmony to deliver customer satisfaction and safety.

12. Plaintiff imported the subject merchandise into the U.S. under cover of 190 Port of Brownsville consumption entries identified in the First Amended Summons between September 3, 2018 and March 23, 2019. *See* Summons, ECF No. 12 (collectively, the "Subject Merchandise" or "Subject Actuators").

13. At the time of entry, the Subject Actuators were erroneously declared as products of China.

14. After a thorough assessment, Plaintiff determined the Subject Actuators are in fact products of Mexico, having been created in that country by a series of manufacturing operations

which resulted in the creation of new and different articles of commerce, having a name, character and use distinct from its component materials and parts.

15. The manufacturing operations performed in Mexico to create the subject actuators include, but are not limited to, injecting molten zinc under high pressure and processing same to create certain components of the actuators; injection-molding resins to create plastic housings and gears; creating the printed circuit board assemblies ("PCBAs") which are incorporated into the actuators; and assembling these and other components which are produced in Mexico, Taiwan and the United States, together with a Chinese-origin DC motor, to create the subject actuators. After assembly operations, the PCBAs are programmed in Mexico with firmware, which enables the actuators' functionality. The fully assembled actuators are 100% tested for travel, load, and noise output prior to being labeled for traceability and acceptance, and then protectively packaged for delivery to customers.

16. Mexican-origin components account for most of the Subject Actuators' cost. United States-origin components account for a majority of the Subject Actuators' components by quantity.

17. On various dates between August 2019 and January 2020, Customs liquidated the subject entries, classifying the actuators under Harmonized Tariff Schedule subheading 8501.10.6060 and assessing in liquidation retaliatory duties at the rate of 25% *ad valorem* imposed on products of China pursuant to subheading 9903.88.02, HTSUS.

18. On February 11, 2020, Plaintiff timely protested CBP's liquidation determinations to impose retaliatory duties on the actuators under subheading 9903.88.02, HTSUS, as Products of Mexico.

19. CBP denied Plaintiff's Protest in full on March 20, 2023.

20. Plaintiff timely filed this action to challenge the denial of its protest on August 30, 2023.

## COUNT I

21. Paragraphs 1 through 20 are restated and incorporated by reference as though fully set out herein.

22. United States Customs and Border Protection uses the test of "substantial transformation" to determine the country of origin of imported goods for purposes of determining whether goods are "Products of China" for purposes of application of retaliatory duties imposed pursuant to the Trade Act of 1974.

23. Under the "substantial transformation" test, where goods or their materials are produced in two or more countries, the country of origin is the country where the good last underwent a "substantial transformation" prior to entering the United States. The United States Supreme Court has defined a "substantial transformation" as a working or processing which creates a new and different article of commerce, having a name, character, or use different than that of its components. *Anheuser-Busch Brewing Assn. v. United States*, 207 U.S. 556, 562. The test requires that "There must be transformation; a new and different article must emerge, "having a distinctive name, character or use."

24. The trade courts have held that "substantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." *Torrington v. United States*, 764 F. 2d 1563, 1568 (Fed. Cir. 1985) (citation omitted). However, because "[t]he article need not experience a change in name, character, and use to be substantially transformed," all three of these elements need not

be met before a court may find substantial transformation. *Koru North America v. United States*, 701 F. Supp. 229, 234 (Ct. Int'l Tr. 1988) (emphasis added).

25. The Subject Actuators created in Mexico are new articles of commerce, which have a *name* different than that of any of their constituent materials or components—*i.e.,* an actuator.

26. The Subject Actuators created in Mexico have a *character* different than that of their component parts and materials. They are electromechanical devices dedicated to a particular purpose, rather than their discrete parts and components which could have seen used to manufacture all manner of finished goods.

27. The Subject Actuators have a different *use* than any of their constituent components or materials. They are capable of accepting electronic commands and of performing specific functions in a motor vehicle by automated activation of a mechanism.

28. The Subject Actuators are products of a substantial transformation in Mexico, having Mexican origin.

29. Defendant erred in denying Plaintiff's Protest which challenged the imposition of tariffs on the Subject Actuators pursuant to subheading 9903.88.02, HTSUS.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor, directing Defendant to reliquidate the Subject Actuators at issue as products of Mexico, and refunding all duties imposed pursuant to subheading 9903.88.02, HTSUS, plus interest as provided by law; and providing Plaintiff with such other and further relief as this Court may deem just.

        Respectfully submitted,

        NEVILLE PETERSON LLP

        /s/ John M. Peterson
          John M. Peterson
          Richard F. O'Neill
          Patrick B. Klein
          One Exchange Plaza
          55 Broadway, Suite 2602
          New York, NY 10006
          (212) 635-2730
          jpeterson@npwny.com

Dated: September 22, 2023